**10**

WANG LABORATORIES,
INC., Plaintiff,

v.

CFR ASSOCIATES, INC., Defendant.

Civ. A. No. 87–0823–T.

United States District Court,
D. Massachusetts.

March 28, 1989.

Dennis McBride, Paul F. Ware, Jr., Boston, Mass., Francis T. Carr, Thomas L.

Creel, Philip J. McCabe, Thomas F. Meagher, New York City, and Michael H. Shanahan, Lowell, Mass., for Wang Laboratories.

William Pericak, Richard Bennett, and Jack R. Pirozzolo, Boston, Mass., for defendant.

ORDER RE: PLAINTIFF'S MOTION FOR PROTECTIVE ORDER TO PRECLUDE DEFENDANT'S USE OF EXPERT WITNESS (DOCKET 508)

PATTI B. SARIS, United States Magistrate.

On December 14, 1988, plaintiff Wang Laboratories, Inc. ("Wang") filed a motion for a protective order to prohibit defendant CFR Associates, Inc. ("CFR") from using John Golini as an expert witness in this litigation and from contacting Mr. Golini for any purpose whatsoever. (Docket 508).

CFR designated Golini as one of its experts on the validity of the '739 patent at issue in this litigation. Wang's motion for a protective order barring any contact with Mr. Golini whatsoever is predicated on two grounds. *First*, Wang argues that Mr. Golini is a former employee of Wang who possesses confidential information about Wang's computer systems that he obtained while he was a Wang employee. In particular, Wang points out that Golini developed software used in the very Wang computer systems covered by the patent in issue.

Golini's resume states he was Wang's Manager of Software Development from July 1976 to January 1980; that he "[d]esigned and implemented operating system for multi-microprocessor office system (Wang 'OIS' Series)"; that he "developed native software development system for same"; and that he supervised eight programmers while involved in these duties. (Memorandum in Support of Plaintiff's Motion, Ex. A).

Indeed, Roger Wise, the president of Infotext, Inc., CFR's primary distributor of the alleged infringing product, testified in a deposition that when Golini was hired by him as an expert witness in July or August 1988, there was no need to give him any materials to analyse because "[h]e wrote the Wang system.... He was one of the software people that was instrumental in the creation of the WPS and OIS systems for Wang Laboratories." (Memorandum in Support of Plaintiff's Motion, p. 3). When hiring Mr. Golini, defendant was also aware that he had worked under the guidance and direction of Harold Koplow, one of the inventors of the '739 patent.

In a reply memorandum, Wang also points out that when Golini joined Wang in July, 1976, the 928 system was just being developed; the first deliveries did not occur until months later; and that Golini spent almost an entire year working with the developers of the software for the first 928 system at Wang before the filing of the '739 patent. (Docket 506, pp. 4–5). In 1976, Golini signed an employment agreement which included the following restriction:

2. Without the approval of said Wang Laboratories, Inc., I will not at any time disclose to others, or use for my own benefit, confidential, unpublished information relating to the business, research or trade secrets of [undecipherable] Wang Laboratories, Inc., their licensees, affiliates, or customers, acquired by me during the period of, or in connection with, my employment by said Wang Laboratories, Inc.

(Docket 506, Ex. C, ¶ 2).[1]

*Second*, Wang argues that Golini should not be allowed access to Wang's confidential documents because his current work deals in Wang-related technology in competition with Wang. Golini's resume states that he has been consulting for a company on the design of non-Wang products to serve as peripherals for Wang OIS systems. Specifically, the resume states that from February 1988 to the present, he designed and implemented an "emulator for DEC VT–100 to be run on WANG OIS workstations. Intent was to enable these

---

1. The copy of the employment agreement contained in Ex. C was extremely difficult to decipher. Therefore, the Court relies on a more legible copy of the agreement submitted by plaintiff's counsel at the Court's request on March 23, 1989.

workstations to be connected to non-WANG UNIX mainframes without violating Wang's patents."

Wang relies on the declaration of Donald R. Dunning, employed by plaintiff as Vice President of Product Engineering. According to Dunning, Wang has produced during discovery technical documents which "would be valuable to someone outside of Wang who desired to develop or enhance products to compete with Wang products." (Docket 506, Declaration of Donald R. Dunning, ¶ 2).

■ In addressing Wang's motion, this court first must determine whether it has the authority to grant the motion to disqualify Mr. Golini and to grant the protective order which Wang seeks. A district judge is authorized under 28 U.S.C. § 636(b)(1) to have a magistrate decide any pretrial matter except certain specified motions. These motions are the ones deemed by Congress to be dispositive. With respect to any decision which does not dispose of the litigation—the non-dispositive motions—Congress has vested the magistrate with a substantial degree of authority. The trial court referred the case here pursuant to Fed.R.Civ.P. 16(b) to determine all non-dispositive pretrial matters.

At least one court has held that a motion to disqualify an expert witness should be deemed a pretrial matter which the magistrate can determine under 28 U.S.C. § 636(b)(1). *Nikkal Industries, Ltd. v. Salton, Inc.,* 689 F.Supp. 187, 189 (S.D.N.Y.1988) (refusing to disqualify defendant's expert witness who, prior to his employment by defendant, was given access to certain non-privileged technical information by plaintiff's counsel during a preliminary interview which did not result in an employment contract).

Certainly some motions to disqualify expert witnesses are properly reserved for the trial judge. *Cf. Dunn v. Sears, Roebuck & Co.,* 639 F.2d 1171, 1174, *modified on other grounds,* 645 F.2d 511 (5th Cir. 1981) (the qualification of an expert depends on his knowledge, skill, experience, training or education, and the trial judge is afforded the widest possible discretion in determining the qualification of a witness as an expert).

However, here the issue is not whether the knowledge, skill, experience, training or education of an expert makes him a qualified witness. Rather, in this case, the concerns raised about the designation of the expert have to do with giving the expert, who consults on products that compete with Wang's, access to confidential information produced during the pretrial discovery process pursuant to a protective order; and with allowing a former employee to use confidential information he obtained during the course of his employment as a sword against his former employer during the discovery process, and at trial, in contravention of an employment agreement. Thus, the pretrial designation of the expert is inextricably intertwined with the discovery process, and this court concludes that the motion should be treated as a non-dispositive pretrial matter.

■ Wang also requests a protective order barring any contact by CFR or its attorneys with Golini. This court does not have authority under Fed.R.Civ.P. 26(c) to bar CFR or its attorneys from contacting former Wang employees as potential witnesses, since that rule only gives a court authority to issue protective orders, for good cause shown, concerning methods of discovery. Informal interviews with a designated witness are not encompassed by Rule 26. *See Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36, 38 (D.Mass.1987).

■ However, apart from Fed.R.Civ.P. 26(c), this court believes and indeed concluded in a prior case that it has the authority to issue appropriate orders to prohibit or remedy abusive or unethical litigation practices. *Id.* at 39 (magistrate has the authority to bar counsel from contacting a former employee of an opposing party in order to obtain attorney-client confidences). Moreover, in an analogous patent infringement case, the Federal Circuit held that a district court had the authority to restrain contacts with an expert who had access to the litigation strategy of the op-

posing party, and who had developed the technology in issue for the opposing party, with a "protective order" rather than an injunction. *See Rigaku Corp. v. Ferro-fluidics Corp.*, 800 F.2d 1115, 1118 (Fed. Cir.1986) (dismissing appeal from interlocutory order denying plaintiffs' motion for an order to prohibit the defendant from consulting with plaintiffs' former engineer who had developed and designed the product accused by defendant of infringing its patents, and who had agreed to serve as plaintiffs' expert even after he terminated his employment, on the ground that "that type of restraint can be routinely handled by a district court through a protective order," not subject to interlocutory appeal, rather than an injunction).

This court also has the authority pursuant to Fed.R.Civ.P. 26(c)(7) to prohibit the disclosure of confidential research, development, or commercial information. Therefore, the court concludes that it has the authority to prohibit through a protective order the disclosure of information produced by Wang pursuant to a request for production of documents which Wang can demonstrate will cause it competitive harm.

■ Wang has demonstrated that this court should allow its motion to disqualify Mr. Golini as an expert witness with respect to any technological developments relating to the patent which occurred during his stay at Wang from 1976 to 1980. Golini did sign an employment contract with Wang, under which he agreed not to use for his own benefit, or disclose to others, "confidential, unpublished information relating to the business, research or trade secrets of Wang Laboratories, Inc." *Cf. Henry Hope X-ray Products, Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir.1982) (under Pennsylvania law, a restrictive covenant limited to a prohibition on disclosing confidential information was valid and enforceable despite the fact that

it did not contain any time or geographical limitations); *Johns–Manville Corp. v. Guardian Industries Corp.*, 586 F.Supp. 1034, 1074 (E.D.Mich.1983) (under Michigan law, which does not enforce covenants not to compete, employment agreement that expressly prohibited the disclosure of *any* developments, even if not patented or trade secrets, either during or after employment was enforceable). Moreover, Wang has demonstrated that the computer systems which the patent covered were developed during the years after Golini arrived and that he worked closely with the inventors listed on the patent. CFR has introduced no evidence which would indicate that Golini's expertise on the Wang patent is based on information not gained during the course of his employment.[2] Indeed, Wise's deposition testimony indicates that is precisely why Golini was hired.

■ Further, pursuant to Fed.R.Civ.P. 26(c), the court bars CFR from consulting with Golini about any "confidential unpublished information relating to the business, research or trade secrets of Wang Laboratories" produced during the discovery process relating to the time period 1976–1980.[3]

Wang has introduced sworn evidence both in conjunction with this and other motions that documents which it has designated as confidential have current competitive value. Therefore, Wang has demonstrated good cause for barring disclosure of its confidential documents to Golini, who admits in his resume that he currently consults companies about products that compete with Wang's products.

■ However, this court does not grant Wang's request that all contacts with Mr. Golini be barred. Because of his role in the development of the software for the computer system at issue, he may be an appropriate fact witness. *See* MBA Comm. on Professional Ethics, Op. 88–5 (June 28,

---

2. Nor has CFR demonstrated that no expert other than Golini can provide it with the expertise it needs, so that in the interest of justice this court should abrogate the employment agreement.

3. There is no evidence in the record that CFR's attorneys were aware of the employment contract between Golini and Wang. Accordingly, there is an inadequate record at this point for determining that CFR or its attorneys was trying to interfere with a contract, or engage in abusive or unethical behavior.

1988). CFR may show Golini and discuss with him any documents which he authored or which the document reveals he received.

Further, it may be that Mr. Golini could testify as an expert concerning information which he obtained prior to or subsequent to his employment at Wang. CFR has provided an inadequate record for determining whether Mr. Golini may be designated as an expert in a way which would not violate his employment agreement, or which would not require access to Wang's confidential business information that has current competitive value.

### CONCLUSION

CFR is barred from showing Mr. Golini any documents marked confidential by Wang except those which he authored or received. It is also barred from using him as an expert with respect to any "confidential unpublished information relating to the business, research or trade secrets" of Wang acquired in connection with his employment from 1976–1980.