**GREENE, TWEED OF DELAWARE, INC.**

v.

**DuPONT DOW ELASTOMERS, L.L.C.**

No. Civ.A. 00–3058.

United States District Court, E.D. Pennsylvania.

May 8, 2001.

Ronald L. Panitch, Panitch, Schwarze, Jacobs and Nadel, Philadelphia, PA, Kevin R. Hamel, Akin, Gump, Strauss, Hauer & Feld, LLP., Philadelphia, PA, David P. Callet, Michael S. Caldwell, Shari L. Fleishman, Akin Gump Strauss Hauer & Feld, Washington, DC, Lynda L. Calderone, Kristyne A. Bullock, Akin Gump Strauss Hauer & Feld, Philadelphia, PA, for Greene, Tweed of Delaware, Inc., Plaintiff.

Mark S. Stewart, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, Leora Ben–Ami, Gerard P. Norton, Philip E. Roux, Neer Gupta, Samuel Waxman, Clifford Chance Rogers & Wells LLP, New York City, for DuPont Dow Elastomers, L.L.C., Defendant.

## MEMORANDUM AND ORDER

WELSH, United States Magistrate Judge.

Plaintiff, Greene, Tweed of Delaware, Inc. ("Green, Tweed"), brought this action alleging that certain activities relating to the manufacture and sale of various products of defendant, DuPont Dow Elastomers, L.L.C. ("DuPont Dow"), infringe United States Patent No. 5,461,107 ("the '107 patent").[1] Plaintiff further contends that DuPont Dow's infringement was willful, and plaintiff therefore seeks, *inter alia*, increased damages and attorneys' fees.

Presently before the Court is the Motion of Defendant, DuPont Dow, and Non-party, E.I. du Pont de Nemours and Company (hereinafter referred to as "the non-party"),[2]

[1]. The '107 patent relates to improving the chemical resistance of perfluoroelastomeric compositions and seals. At issue in this case are specially formulated O-rings that are, among other things, highly resistant to heat and chemical attack.

[2]. Defendant, DuPont Dow, and non-party, E.I. du Pont de Nemours and Company, are herein

to Preclude Plaintiff from Naming Charles Stewart and Anestis Logothetis as Experts and to Preclude Plaintiff from Showing Confidential Information to Them as Fact Witnesses.[3] Specifically, DuPont requests that the Court enter an Order (1) disqualifying former DuPont employees, Drs. Stewart and Logothetis, from serving as consultants or experts for plaintiff in this litigation, and (2) preventing these individuals from being provided confidential information of DuPont in their alternative capacities as fact witnesses. *See* DuPont's Mot. at 1.

In support of the present motion, DuPont alleges that Drs. Stewart and Logothetis had access to confidential information during their previous employment with DuPont. *Id.* DuPont is concerned that if plaintiff uses Stewart and Logothetis as consultants or experts, they will inevitably disclose DuPont's confidential information to plaintiff. *Id.* at 1–2. In addition, DuPont is concerned that plaintiff will disclose confidential information to Stewart and Logothetis in their capacities as fact witnesses. *Id.* at 2.

In its memorandum in opposition to DuPont's motion, plaintiff argues that "Greene, Tweed is entitled to any information bearing on its claim of infringement, confidential or not, and it is entitled to speak to any persons with knowledge thereon." *See* Pl.'s Mem. at 2. Plaintiff further argues that the Stipulation and Protective Order dated March 16, 2001 negotiated and agreed upon by the parties and approved by the Court sufficiently protects any legitimate interests in confidentiality of the parties.[4] *Id.* In addition, plaintiff argues that "[n]ot a single shred of evidence has been presented to support any of [DuPont's] sweeping factual allegations" and

that "[w]ithout providing hard evidence to support their claims ..., [DuPont] should not be awarded the extraordinary relief they seek." *See* Pl.'s Mem. at 4.

## I. DISQUALIFYING EXPERT WITNESSES

██ Federal courts have the inherent power to disqualify expert witnesses in certain circumstances to protect the integrity of the adversary process and to promote public confidence in the legal system. *Space Sys./Loral v. Martin Marietta Corp.,* No. 95–20122, 1995 WL 686369, at *2 (N.D.Cal.1995) (citing *Wang Labs., Inc. v. Toshiba Corp.,* 762 F.Supp. 1246, 1248 (E.D.Va.1991)). One situation where disqualification may be appropriate is when a party retains an expert witness who previously worked for an adversary and who acquired confidential information during the course of his employment. *Space Sys./Loral,* 1995 WL 686369, at *2; *see Toshiba Corp.,* 762 F.Supp. at 1248.

██ When determining whether to disqualify an expert based on a prior relationship with the adversary, a court must undertake the following two-step inquiry: (1) Did the adversary, in this case Dupont, have a confidential relationship with the expert?; and (2) Did the adversary disclose confidential or privileged information to the expert that is relevant to the current litigation? *See Space Sys./Loral,* 1995 WL 686369, at *2 (patent infringement suit where defendant moved to disqualify plaintiff's expert on the grounds that the expert previously worked for defendant); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* No. MDL 1014, 1995 WL 925673, at *3 (E.D.Pa. May 5, 1995) (denying

referred to collectively as "DuPont."

**3.** According to the present motion, "DuPont Dow was formed on April 1, 1996 as a joint venture between E.I. du Pont de Nemours and Company and the Dow Chemical Company." *See* DuPont's Mot. at 3. Pursuant to Fed.R.Civ.P. 24(b), the non-party has requested leave to intervene in this litigation for the limited purpose of the present motion on the grounds that it alleges that it's "trade secrets are threatened to be disclosed and disseminated by this litigation, and confidentiality agreements with former employees have been breached or are threatened to be breached by their engagement as experts and/or consultants for Greene, Tweed." *See* DuPont's Mot. at n. 1.

The non-party does not seek to intervene as a party to this lawsuit, *id.,* and plaintiff has not indicated any opposition to the non-party's intervention for the stated limited purpose.

**4.** In particular, the Stipulation and Protective Order in this case provides, *inter alia,* that any confidential information exchanged will be used "solely for the preparation, trial, and appeal of this lawsuit; settlement discussions and negotiations pertaining to this lawsuit; or any form of alternative dispute resolution of this lawsuit; and for no other purpose of publication whatsoever, whether directly or indirectly." *See* Stip. and Prot. Order dated 3/16/01, ¶ 2.

defendant's motion to disqualify an expert despite defendant's allegations that it had retained the expert as a consultant and conveyed confidential information to him); *Toshiba Corp.*, 762 F.Supp. at 1248 (patent infringement suit where plaintiff filed motion to disqualify expert claiming to have previously retained him).

■ If the answers to both inquiries are affirmative, a court should disqualify the expert. *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 925673, at *3; *Toshiba Corp.*, 762 F.Supp. at 1248. However, disqualification is likely inappropriate if either inquiry yields a negative response. *Id.; see In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 925673, at *3. Thus, generally, disqualification "should not occur where a confidential relationship existed but no privileged information was communicated or alternatively, where no confidential relationship existed but privileged information was nonetheless disclosed." *Id.* (quoting *Mayer v. Dell*, 139 F.R.D. 1, 3 (D.D.C.1991) (citations omitted)).

■ The party who seeks disqualification of an expert has the burden of showing the existence of confidentiality and its non-waiver. *In re Orthopedic Bone Screw Prods. Liab. Litig*, 1995 WL 925673, at *3; *United States ex rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc.*, 994 F.Supp. 244, 249 (D.N.J.1997); *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F.Supp. 1498, 1501–02 (D.Colo.1993). Furthermore, the party requesting disqualification may not meet its burden with "mere conclusory or *ipse dixit* assertions." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 925673, at *6 (citing *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F.Supp. 187, 191 (S.D.N.Y.1988)).

In the present case, DuPont clearly had a confidential relationship with both Stewart and Logothetis at the time of their previous employment, and plaintiff does not specifically deny this in its opposition to DuPont's motion. Both individuals were employed by DuPont as research scientists, and both signed employment and termination agreements that included confidentiality clauses (copies of which are attached to DuPont's Motion as Exhibit "A"). Therefore, DuPont

has satisfied the first part of the aforementioned two-prong test, and the remaining issue is whether confidential information was disclosed to these individuals "that is relevant to the current litigation" and that would warrant a disqualification of either or both of them as experts for plaintiff. *See Space Sys./Loral*, 1995 WL 686369, at *2; *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 925673, at *3; *Toshiba Corp.*, 762 F.Supp. at 1248.

In *Viskase Corp. v. W.R. Grace and Co.-Conn.*, No. 90–7515, 1992 WL 13679, at *1 (N.D.Ill. Jan. 24, 1992), a patent infringement case, the plaintiff corporation sought to disqualify the defendant's proposed expert on the grounds that the individual was previously employed by the plaintiff's predecessor corporation. As in the present case, the proposed expert had signed an employment agreement requiring confidentiality with the predecessor corporation of the party seeking disqualification. *Id.* at *6 n. 2.

The Court in *Viskase* found that the plaintiff had failed to demonstrate that the proposed expert had "direct involvement in the licensing of products containing the resins at issue in [the] lawsuit." *Id.* at *2. The *Viskase* Court further concluded that "there [was] not a *substantial relationship* between the *confidential information* [the proposed expert] would have acquired while employed by [the predecessor corporation] and the matters to which he would be expected to testify in this case." *Id.* (emphasis added). Accordingly, the Court in *Viskase* denied the motion to disqualify the proposed expert. *Id.*

In *Space Systems/Loral*, 1995 WL 686369, at *1, the plaintiff alleged the infringement of two of its patents covering "attitude control" technology which enabled satellites to maintain a constant orientation towards the earth. The defendant corporation sought to disqualify two individuals who had previously been employed by the defendant from being designated as experts for the plaintiff, Space Systems/Loral ("SSL"). The proposed experts had signed confidentiality agreements with the defendant corporation. *Id.* at *1, *3.

The Court granted the defendant's motion to disqualify one of the proposed experts on the basis that the proposed expert "had sig-

nificant involvement in designing the attitude control systems" for the alleged infringing products in that litigation, and the witness "was privy to *substantial confidential information* from [the defendant] that [was] relevant to the issues in [the] case." *Id.* at \*2–3. With regard to the second proposed expert in *Space Systems/Loral,* the defendant corporation alleged that the proposed expert possessed "crucial" knowledge because he was involved in the development of attitude control systems which were "operationally similar" to the infringing products and "which evolved into the system used in the [infringing products]." *Id.* However, the Court noted that this second proposed expert "possess[ed] no *confidential information* concerning . . . the *specific technology at issue in this lawsuit."* *Id.* (emphasis added). Therefore, with respect to that individual, the Court denied the motion to disqualify plaintiff's expert. *Id.*

In the present case, as explained above, DuPont has the burden of showing the existence of confidentiality and its non-waiver. *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 1995 WL 925673, at 3; *United States ex rel. Cherry Hill Convalescent Ctr., Inc.,* 994 F.Supp. at 249; *English Feedlot, Inc.,* 833 F.Supp. at 1501–02. However, DuPont has failed to satisfy its burden of demonstrating that Drs. Logothetis or Stewart were privy to "confidential information concerning . . . the specific technology at issue in this lawsuit." *See Space Sys./Loral,* 1995 WL 686369, at \*3; *see also Viskase Corp.,* 1992 WL 13679, at \*2; *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 1995 WL 925673, at \*7 ("record is void of any evidence that confidential information was disclosed . . .").

As explained by the Court in *Space Systems/Loral,* asserting that the proposed experts were involved in the development of technology which was "operationally similar" to the infringing products or "which evolved into the [technology] used in the [infringing products]" is not enough. *See Space Sys./Loral,* 1995 WL 686369, at \*2–3. Nor can DuPont satisfy its burden by making conclusory assertions that the proposed ex-

perts were "privy to substantial confidential information related and unrelated to this litigation." *See, e.g.,* DuPont's Mot. at 9. For example, DuPont's conclusory assertions that certain information is "not publicly available," without supporting evidence, is not enough to satisfy the burden of showing confidentiality and its non-waiver. *See In re Orthopedic Bone Screw Prods. Liab. Litig.,* 1995 WL 925673, at 3; *United States ex rel. Cherry Hill Convalescent Ctr., Inc.,* 994 F.Supp. at 249; *English Feedlot, Inc.,* 833 F.Supp. at 1501–02. Of course, as plaintiff points out, *see* Pl.'s Letter Brief dated 4/6/01, at 2, the fact that an individual may have had access to *public* information about a product cannot be a basis to disqualify him from being an expert.

■ With respect to Dr. Logothetis, although documents submitted by DuPont indicate that he assisted in the development of improved polymerization, the documents do not show that he was privy to *confidential* information relevant to the alleged *infringing products* in this case. *See Viskase Corp.,* 1992 WL 13679, at \*2. Furthermore, as plaintiff correctly points out, *see* Pl.'s Letter Brief dated 4/6/01, at 2, the fact that Dr. Logothetis' name appears on some "Distribution" lists, along with approximately one hundred other names, also does not prove that he was privy to confidential information substantially related to the alleged infringing products.[5] *See, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig.,* 1995 WL 925673, at \*7 (affidavit stating that "the parties discussed confidential information at the meeting, including 'the scope of the products liability litigation pending against [the defendant], including this litigation' . . . [did] not provide the court with sufficient evidence that confidential information was discussed."). DuPont has failed to present evidence demonstrating that any information to which Dr. Logothetis was privy was kept *confidential* at the time it was given or that confidentiality has since been maintained and not waived. *See id.* at \*3 (party seeking disqualification of expert has burden of showing existence of confidentiality and its

---

**5.** Indeed, these "Distribution" lists (copies of which are attached to DuPont's Letter Brief dated 4/5/01) state *"Anyone* interested in being added to the distribution list or would like your name removed from the list, please contact Miriam DiSantis, ELAS, TRALEE PARK, via EMAIL . . ." (emphasis added).

non-waiver); *United States ex rel. Cherry Hill Convalescent Ctr., Inc.*, 994 F.Supp. at 249 (same); *English Feedlot*, 833 F.Supp. at 1501–02 (same).

■ With regard to Dr. Stewart, DuPont has submitted for *in camera* review Document Nos. 9 and 12 identified in DuPont Dow's Second Privilege Log [6] in support of the claim that Dr. Stewart was privy to attorney-client privileged communications.[7] *See* DuPont's Letter Brief dated 4/5/01, at 2. In opposition to this claim of privilege, plaintiff responds that "[b]y relying on an opinion of counsel concerning [the] alleged invalidity of the '107 patent [in DuPont Dow's affirmative defenses to plaintiff's charge of willful infringement], DuPont Dow has waived its privilege with regard to the subject matter of that opinion, i.e., the invalidity of the '107 patent." *See* Pl.'s Letter Brief dated 4/6/01, at 3. Plaintiff further points out that "this very issue is argued in [plaintiff's] motion to compel documents." *Id.* at 4.

By Memorandum and Order dated May 1, 2001, this Court granted in part and denied in part plaintiff's aforementioned Motion to Compel Documents Identified in Defendant DuPont Dow's Privilege Log, which included a request for Document Nos. 9 and 12 identified in DuPont Dow's Second Privilege Log. As explained in the May 1st Memorandum and Order, "DuPont Dow has waived the [attorney-client] privilege ... with respect to the issue of validity of the '107 patent." *See* Mem. and Order dated 5/1/01, at 7 (citing *Saint–Gobain/Norton Indus. Ceramics Corp. v. General Elec. Co.*, 884 F.Supp. 31, 34 (D.Mass.1995)); *see also Applied Telematics, Inc. v. Sprint Corp.*, No. 94–4603, 1995 WL 567436, at *3 (E.D.Pa. Sept. 21, 1995);

*Mushroom Assoc. v. Monterey Mushrooms, Inc.*, No. 91–1092, 1992 WL 442892, at *3 (N.D.Cal. May 19, 1992).

According to DuPont Dow's own description of Document No. 12 in the Second Privilege Log, this document "reflects legal advice regarding [the] *invalidity of [the] '107 patent* based upon prior art" (emphasis added). Furthermore, Document No. 9 appears to be a memorandum provided in response to inquiries made in Document No. 12 related to the invalidity of the '107 patent. *See* DuPont's Letter Brief dated 4/5/01, at 2. Moreover, in DuPont's April 5, 2001 letter brief in support of the present motion, counsel acknowledges that "[Document Nos. 9 and 12] reflect assembling information *concerning invalidity* for anticipation." *See* DuPont's Letter Brief dated 4/5/01, at 2 (emphasis added).

In any event, this Court has previously determined that DuPont Dow waived the attorney-client privilege with respect to the information reflected in Document Nos. 9 and 12, since these two documents are relevant to the issue of invalidity of the '107 patent. *See* Mem. and Order dated 5/1/01, at 10–11. Accordingly, DuPont has failed to demonstrate that while Dr. Stewart was employed by DuPont, he was privy to any communications which are now privileged and not waived.

Since DuPont has failed to meet its burden of demonstrating that Dr. Logothetis or Dr. Stewart were privy to confidential information while employed at DuPont which was substantially related to the alleged infringing products in this case, DuPont's motion to preclude plaintiff from naming these gentlemen as experts is denied.[8] *See Viskase*

---

6. As explained in this Court's Memorandum and Order dated May 1, 2001, *see* Mem. and Order dated 5/1/01, at n. 1, on or about March 7, 2001, DuPont Dow produced a privilege log identifying the documents which it believed to be protected by the attorney-client privilege or work product immunity. After reconsidering whether any of the withheld documents were improperly designated as privileged, and in an attempt to, among other things, provide more detailed descriptions of the withheld documents, DuPont Dow subsequently provided a second privilege log (herein referred to as "Second Privilege Log"). *Id.*

7. DuPont produced redacted versions of these documents to plaintiff. *See* DuPont's Letter Brief dated 4/5/01, at 2.

8. Although DuPont also claims that trade secret law and the " 'inevitable disclosure' doctrine" also compel disqualification of Drs. Stewart and Logothetis as expert witnesses for plaintiff, *see* DuPont's Mot. at 12–13; DuPont's Reply at 1, DuPont fails to cite a case disqualifying an expert witness specifically on the basis of the " 'inevitable disclosure' doctrine." In *Air Products and Chemicals, Inc. v. Johnson*, 296 Pa.Super. 405, 442 A.2d 1114, 1120 (1982), which is cited by DuPont in support of its position, *see* DuPont's Mot. at 12; DuPont's Reply at 7, the issue was

*Corp.*, 1992 WL 13679, at *2; *see also Space Sys./Loral*, 1995 WL 686369, at *2–3. Of course, any information designated as "Confidential Information" by any party or non-party disclosing such information during discovery is subject to the March 16, 2001 Stipulation and Protective Order entered in this case which provides, *inter alia*, that any such information shall be used "solely for the preparation, trial, and appeal of this lawsuit; settlement discussions and negotiations pertaining to this lawsuit; or any form of alternative dispute resolution of this lawsuit; and for no other purpose of publication whatsoever, whether directly or indirectly." *See* Stip. and Prot. Order dated 3/16/01, ¶ 2.

## II. STEWART AND LOGOTHETIS AS FACT WITNESSES

■ DuPont "do[es] not dispute that trade secrets are relevant to this case," and it acknowledges that several former DuPont employees, including Drs. Stewart and Logothetis, "may have factual knowledge relevant to the issues in this case, and [DuPont Dow] expect[s] to call them as fact witnesses as well." *See* DuPont's Mot. at 14. However, although it does not seek to preclude plaintiff from calling Drs. Stewart and Logothetis as fact witnesses, DuPont is "concerned ... that [plaintiff] wishes to show documents containing [DuPont] confidential information, and to discuss such information with Stewart, Logothetis, and other ex-employees without anyone else present." *See* DuPont's Mot. at 14. On these bases, DuPont's motion requests the following specific relief: either (1) a representative from DuPont be present during plaintiff's discussions with Drs. Stewart and Logothetis, and be

whether the Court should enjoin the plaintiff's ex-employee from working for the plaintiff's competitor as an employee in a context other than litigation. However, as DuPont acknowledges, *see id.* at 8, 442 A.2d 1114, in the context of determining whether to disqualify an expert for litigation purposes based on a prior relationship with an adversary, the applicable standard is the aforementioned two prong inquiry. *See Space Sys./Loral*, 1995 WL 686369, at *2; *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 925673, at *3; *Toshiba Corp.*, 762 F.Supp. at 1248. In any event, as explained above, despite DuPont's conclusory assertions to the contrary, DuPont has failed to demonstrate that the proposed experts in this case were privy to any

given an opportunity to object, or (2) that Drs. Stewart and Logothetis be appointed their own, independent counsel, who would not represent either party to this suit.[9] *Id.* at 15.

DuPont fails to cite any applicable caselaw where a court granted the specific relief requested by DuPont in the present case with respect to a fact witness. Indeed, at the April 4, 2001 oral argument on the present motion, counsel for DuPont acknowledged that it knew of no such caselaw where the specific relief requested by DuPont was granted in this context.

In *Wang Laboratories, Inc. v. CFR Associates, Inc.*, 125 F.R.D. 10 (D.Mass.1989), the plaintiff filed a motion for a protective order to prohibit the defendant in that case from contacting a proposed witness who was a former employee of the plaintiff corporation and who was also subject to a confidentiality clause in his employment contract. Although the Court in *Wang Laboratories* disqualified the proposed expert in that case,[10] the Court found that "[b]ecause of his role in the development of the software for the computer system at issue, [the witness] may be an appropriate fact witness." *Id.* at 13. The Court held that the defendant "may show [the witness] and discuss with him any documents which he authored or which the document reveals he received." *Id.* at 14.

Similarly, in the present case, the March 16, 2001 Stipulation and Protective Order which was negotiated and agreed upon by the parties and approved by the Court, states:

Witnesses or potential witnesses may be shown any Confidential Information that

confidential or privileged information substantially related to the specific technology at issue in this case.

9. According to plaintiff, both Drs. Stewart and Logothetis have chosen plaintiff's counsel to represent them. *See* Pl.'s Mem. at 16 n. 8.

10. The Court in *Wang Laboratories* disqualified the former employee as an expert witness because of his direct role as a developer of the patented software at issue in the litigation, a conclusion that was supported by deposition testimony of a primary distributor of the alleged infringing product. *See Wang Labs.*, 125 F.R.D. at 11, 13–14.

that person had lawfully received prior to and apart from this lawsuit or which appears on its face or from other documents, testimony, or information to have been authored by that witness, received by that witness, or communicated to that witness.

Stip. and Prot. Order dated 3/16/01, ¶ 6(e). Furthermore, as discussed above, pursuant to the Stipulation and Protective Order, any exchange of confidential information during discovery in this litigation "shall be used by every party or non-party receiving such information ... solely for the preparation, trial, and appeal of this lawsuit; settlement discussions and negotiations pertaining to this lawsuit; or any form of alternative dispute resolution of this lawsuit; and for no other purpose or publication whatsoever, whether directly or indirectly." *Id.* ¶ 2. Accordingly, in light of the lack of caselaw cited as authority in support of the specific relief requested by DuPont in the present motion with respect to Drs. Stewart and Logothetis as fact witnesses, and consistent with the March 16, 2001 Stipulation and Order entered in this case, plaintiff may question Drs. Stewart and Logothetis about the documents which they authored or received, and DuPont's motion is denied.

An implementing Order follows.

### ORDER

AND NOW, this 8th day of May, 2001, upon consideration of the Motion of Defendant, DuPont Dow Elastomers, L.L.C. ("DuPont Dow"), and non-party, E.I. du Pont de Nemours and Company, to Preclude Plaintiff from Naming Charles Stewart and Anestis Logothetis as Experts and to Preclude Plaintiff from Showing Confidential Information to Them as Fact Witnesses, for the reasons given in the accompanying Memorandum, it is hereby ORDERED that the motion is DENIED.