**Stephen LACROIX, PPA Roger D. Lacroix, Jr., Plaintiff,**

v.

**BIC CORPORATION, Defendant,**

**No. CIV.A. 02–40037–CBS.**

United States District Court, D. Massachusetts.

Oct. 12, 2004.

Joseph J. Cariglia, Law Office of Attorney Joseph J. Cariglia, John E. Stafford, Law Office of Attorney Joseph J. Cariglia, Paul J. Franco, Law Office of Joseph J. Cariglia, PC, Worcester, MA, for Plaintiff.

Thomas B. Farrey, III, Brooke P. Seliger, Burns & Farrey, Worcester, MA, for Bic Corporation, Defendant.

## AMENDED ORDER

SWARTWOOD, United States Magistrate Judge.

### I. *Nature of the Proceeding*

On April 2, 2002, this case was referred to me by consent of the parties for all further proceedings in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. This Order addresses defendant's motion to disqualify plaintiff's expert, Nicholas Dembsey, Ph.D., or in the alternative, to extend time for completion of his expert deposition (Docket No. 36).

### II. *Nature of the Case*

This is a products liability case involving an alleged explosion of a Bic lighter which resulted in injuries to the minor Plaintiff. Defendant Bic Corporation ("Bic") moves to disqualify one of the experts retained by the plaintiff, arguing that disqualification is proper as the expert previously served as an expert for Bic and it has executed a non-disclosure agreement with the expert. Plaintiff argues that the expert's involve-

ment with Bic was insignificant and he has not had any contact with Bic since 1999.

### III. *Background*

In or around August 1996, Bic retained Nicholas Dembsey, Ph.D., to provide consultant/expert witness services in connection with the defense of a suit then pending against Bic. Mr. Dembsey is an Associate Professor of Fire Protection Engineering in the Center for Firesafety Studies at the Worcester Polytechic Institute, as well as an independent consultant in fire dynamics. It is undisputed that prior to his retention as an expert by Bic, Mr. Dembsey signed a Confidential Non–Disclosure Agreement with Bic on August 28, 1996. The Agreement provides, in pertinent part, that Mr. Dembsey may have access to certain information that may be confidential or proprietary in nature and that he agrees not to disclose or use the information outside of Bic matters. Bic asserts that, in connection with the services rendered by Mr. Dembsey as a previously engaged expert and consultant, Bic provided Mr. Dembsey with information and documentation which was non-public, confidential and proprietary in nature. Bic further asserts that these disclosures included information relating to Bic's lighter manufacturing processes, testing and litigation strategy.

This case was removed from Worcester Superior Court to this court on March 4, 2002. Mr. Dembsey was contacted by the plaintiff's attorney and thereafter, retained as an expert regarding claims by the plaintiff in this case. In his affidavit, Mr. Dembsey states that all of the materials he has reviewed concerning this matter were provided by the plaintiff's attorney. Mr. Dembsey further states that he did not review, consult or utilize any research or privileged information he may have been exposed to during his consultation with

Bic. Mr. Dembsey contends that his opinion in this matter was based solely on the facts of the litigation and his expertise with fire dynamics. Mr. Dembsey denies having any contact with Bic since July, 1999, a fact not disputed by Bic.

On March 1, 2004, plaintiffs made an expert disclosure in accordance with Rule 26(a)(2) identifying Mr. Dembsey as one of the potential experts to be used at trial, along with a copy of an email message from Mr. Dembsey setting forth his opinion on the case. Following the disclosure, on March 3, 2004, plaintiff sent a report signed by Mr. Dembsey in which he reiterated the same opinion as in the email message, along with a copy of Mr. Dembsey's curriculum vitae. Bic responded by notifying plaintiff of its objection to Mr. Dembsey serving as his expert witness and filing this motion to disqualify Mr. Dembsey as an expert.

### IV. *Discussion*

#### A. *Bic Corporation's Motion to Disqualify Plaintiff's Expert, Nicholas Dembsey, Ph.D.*

■ Although courts are generally reluctant to disqualify expert witnesses, *see Palmer v. Ozbek,* 144 F.R.D. 66, 67 (D.Md. 1992), federal courts have inherent authority to disqualify experts "if necessary to preserve public confidence in the fairness and integrity of the judicial system." *Koch Refining Co. v. Jennifer L. Boudreaux, M/V,* 85 F.3d 1178, 1181 (5th Cir. 1996); *Wang Laboratories, Inc. v. Toshiba Corp.,* 762 F.Supp. 1246, 1248 (E.D.Va. 1991); *Campbell Industries v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir.1980) ("A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial... including disqualifying expert testimony."); *Paul v. Rawlings Sporting Goods,* 123 F.R.D. 271, 278 (S.D.Ohio 1988). Disqualification of an ex-

pert is appropriate when a party retains an expert who previously worked for an adversary and received confidential information from the first client. *See Erickson v. Newmar Corp.,* 87 F.3d 298, 300 (9th Cir.1996) (acknowledging that in a "switching sides" case, the "court may grant the original hiring party's motion to disqualify the expert when it is determined that the expert is in possession of confidential information received from the first client."); *Koch Refining Co. v. Boudreaux,* 85 F.3d at 1180 (stating that there is a "clear case for disqualification" when an expert switches sides in the same litigation after receiving confidential information from the adverse party pursuant to its earlier retention).

Although most expert disqualification cases involve a testifying expert, courts employ the same test in determining whether to disqualify a consulting expert. *See Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.,* 734 F.Supp. 334 (N.D.Ill.1990) (denying motion to disqualify expert consultant under the same test used when considering disqualifying a testifying expert finding that there was no "leakage" of information between defendants' experts and plaintiff's expert both of whom worked for the same company.); *Conforti & Eisele, Inc. v. New Jersey,* 170 N.J.Super. 64, 405 A.2d 487 (1979).

■ To resolve a motion to disqualify an expert in cases other than where an expert has clearly switched sides, the court undertakes a two-step inquiry. *Stencel v. Fairchild Corp.,* 174 F.Supp.2d 1080, 1083 (D.Ca.2001); *Koch Refining Co. v. Boudreaux,* 85 F.3d at 1181. The court must determine whether, (1) it was objectively reasonable for the moving party to believe that it had a confidential relationship with the expert; and (2) whether the moving party disclosed confidential information to

the expert that is relevant to the current litigation. *See Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. at 278; *Wang v. Toshiba Corp.*, 762 F.Supp. at 1248. "Affirmative answers to both inquiries compel disqualification." *Id.* However, disqualification may not be warranted even if the expert witness has signed a confidentiality agreement with the adversary. *See Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. at 278 ("[T]here may be situations where, despite the existence of a formal contractual relationship, so little of substance occurs during the course of the relationship that neither the integrity of the trial process, nor the interests of the party who retained the expert, would be served by blanket disqualification.").

In analyzing the disqualification issue, the court also balances competing policy objectives and considers concerns of fundamental fairness. *Koch Refining Co. v. Boudreaux*, 85 F.3d at 1182. " 'The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process.' " *Id.* (quoting *English Feedlot v. Norden Labs., Inc.*, 833 F.Supp. 1498, 1504 (D.Col.1993)). Policies disfavoring disqualification include "ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling." *Id.* (citing *English Feedlot v. Norden Labs.*, 833 F.Supp. at 1504–05).

### 1. *Confidential Relationship*

▆▆▆ The party seeking disqualification bears the burden of showing that it was reasonable for it to believe that a confidential relationship existed, *see Hewlett–Packard Co. v. EMC Corp.*, 330 F.Supp.2d 1087, 1093 (N.D.Cal.2004), citing *Mayer v. Dell*, 139 F.R.D. 1, 3 (D.D.C. 1991), and "whether the relationship developed into a matter sufficiently substantial to make disqualification or some other ju-

dicial remedy appropriate," *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. at 278. The Court may consider several factors, including:

> whether the relationship was one of long standing and involved frequent contacts instead of a single interaction with the expert, whether the expert is to be called as a witness in the underlying case, whether alleged confidential communications were from expert to party or vice-versa, and whether the moving party funded or directed the formation of the opinion to be offered at trial.

*Stencel v. Fairchild Corp.*, 174 F.Supp.2d at 1083. "Other factors include whether the parties entered into a formal confidentiality agreement, whether the expert was retained to assist in the litigation, the number of meetings between the expert and the attorneys, whether work product was discussed or documents were provided to the expert, whether the expert was paid a fee, whether the expert was asked to agree not to discuss the case with the opposing parties or counsel, and whether the expert derived any of his specific ideas from work done under the direction of the retaining party." *Hewlett–Packard v. EMC Corp.*, 330 F.Supp.2d at 1093. *See also, Mayer v. Dell*, 139 F.R.D. at 2–3; *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. at 280. The emphasis "is not on whether the expert was retained per se but whether there was a relationship that would permit the litigant reasonably to expect that any communications would be maintained in confidence." *Hewlett–Packard v. EMC Corp.*, 330 F.Supp.2d at 1093, citing *In re Ambassador Group, Inc., Litigation*, 879 F.Supp. 237, 243 (E.D.N.Y. 1994).

### 2. *Confidential Information*

Confidential information essentially is information "of either particular signifi-

cance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege." *Hewlett–Packard v. EMC Corp.*, 330 F.Supp.2d at 1094 quoting *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. at 279; *Mayer v. Dell*, 139 F.R.D. at 3. It could include discussion of the party's "strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] view of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses." *Hewlett–Packard v. EMC Corp.*, 330 F.Supp.2d at 1094; *Mayer v. Dell*, 139 F.R.D. at 4. At least one court has concluded that "[c]ommunication based upon technical information as opposed to legal advice is not considered privileged." *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F.Supp. 187, 191–92 (S.D.N.Y. 1988).

■ Applying this analysis to the facts of this case, I believe that Bic has shown that a sufficient confidential relationship existed between it and Mr. Dembsey concerning Bic's proprietary and confidential information, that is, relating to the manufacturing and design of its products. He is therefore restricted from using or disclosing any information which can be so defined. Additionally, Mr. Dembsey is restricted from communicating any information concerning litigation strategy to which he was exposed during his consultation with Bic. The Agreement signed by Mr. Dembsey before he was retained by Bic requires him to do so, and agreements of this type are generally enforceable. *See Wang v. CFR Associates*, 125 F.R.D. 10, 13 (D.Mass.1989). The relationship between Bic and Mr. Dembsey was significant in that it involved his work as a consultant and as an expert witness over the course of several years.

■ Notwithstanding the Agreement, there appears to be little or nothing in the way of confidential information relevant to the current litigation to which Mr. Dembsey was exposed. It is undisputed that the parties never communicated on matters of any substance relating to the specifics of this case. It is further undisputed that the last communication between Bic and Mr. Dembsey was in July of 1999, one year before the plaintiff in this case sustained his injury. As in the oft-cited *Paul* case, Mr. Dembsey did not develop any expertise in the area of fire safety from work done under Bic's direction or using its funds. *See Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. at 280. Accordingly, I believe that Bic has not disclosed confidential information to Mr. Dembsey that is specific to the current litigation and I will not disqualify him as an expert for the plaintiff.

While Bic has not demonstrated that I should allow its motion to disqualify Mr. Dembsey as an expert witness for the plaintiff, I am compelled to uphold the Agreement with respect to any confidential and proprietary information Mr. Dembsey could have obtained during his relationship with Bic. *See Wang v. CFR Associates*, 125 F.R.D. at 13. I have the authority, pursuant to Fed.R.Civ.P. 26(c)(7) to prohibit the disclosure of confidential research, development, or commercial information. *Id.* Therefore, I will prohibit Mr. Dembsey from testifying or utilizing for purposes of this litigation, any information he received during the years of his affiliation with Bic. Because of Mr. Dembsey's extensive curriculum vitae in the area of fire science and since no conflict of interest exists with respect to the facts of plaintiff's case, Mr. Dembsey may be an appropriate and useful witness for the plaintiff.

### V. *Conclusion*

1. Defendant Bic Corporation's Motion to Disqualify Plaintiff's Expert, Nicholas

Dembsey, Ph.D., (Docket No. 36) is *denied,* but defendant's motion, in the alternative, to Extend Time for the Completion of His Expert Deposition, is *allowed* and that deposition shall be completed by September 30, 2004.